UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DEBBIE T., | ) | Case No. 8:20-cv-02321-SP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

**I.**

**INTRODUCTION**

On December 9, 2020, plaintiff Debbie T. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents four disputed issues for decision: (1) whether the

Administrative Law Judge ("ALJ") properly evaluated plaintiff's subjective complaints; (2) whether the ALJ properly evaluated the opinion of consultative examiner Editha Uy, M.D.; (3) whether the vocational evidence is incomplete or contradictory; and (4) whether the ALJ properly considered third-party evidence. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 1-19; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-16.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred in failing to properly consider plaintiff's testimony, third-party witness testimony, and the opinion of Dr. Uy.  The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 57 years old on the alleged disability onset date, has a high school education.  AR at 71, 187.  Plaintiff has past relevant work as a billing clerk and as a collections agent.  AR at 30, 65.

On December 15, 2016, plaintiff filed an application for DIB, alleging she became disabled on October 28, 2016 due to generalized anxiety disorder, degenerative disc disease with disc herniation in the lower back, fibromyalgia, hypertension, type 2 diabetes mellitus, major depressive disorder, and problems in both legs.  AR at 71-72.  The agency denied the application initially and on reconsideration.  AR at 71-82, 84-94.  On February 5, 2019, plaintiff appeared with a non-attorney representative and testified at a hearing before the ALJ.  AR at 41-65.  The ALJ also heard testimony from Joseph Torres, a vocational expert.  *Id*. at 64-69.  On March 22, 2019, the ALJ issued a decision denying plaintiff's claim.  AR at 19-31.

Applying the well-known five-step sequential evaluation process, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 28, 2016.  AR at 21.

At step two, the ALJ found plaintiff suffered from the severe impairments of obesity and lumbar spine degenerative disc disease.  AR at 21.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1.  AR at 26.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff had the RFC to perform light work, with the limitations that she: can lift, carry, push, or pull up to 20 pounds occasionally and 10 pounds frequently; can stand or walk for about two hours in an eight-hour day, and requires a handheld assistive device for ambulation; can sit for about six hours in an eight-hour day; can occasionally push and pull with the bilateral lower extremities; can occasionally climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl.  AR at 26.

The ALJ found at step four that plaintiff was able to perform her past relevant work as a billing clerk.  AR at 30.  Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act.  AR at 31.

Plaintiff filed a timely request for review of the ALJ's decision, which the

---

[1]    Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  Appeals Council denied.  AR at 5-10.  The ALJ's decision stands as the final
2  decision of the Commissioner.

3  ### III.

4  ### **STANDARD OF REVIEW**

5  This court is empowered to review decisions by the Commissioner to deny
6  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
7  Administration must be upheld if they are free of legal error and supported by
8  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
9  (as amended).  But if the court determines the ALJ's findings are based on legal
10 error or are not supported by substantial evidence in the record, the court may
11 reject the findings and set aside the decision to deny benefits.  *Aukland v.*
12 *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
13 1144, 1147 (9th Cir. 2001).

14 "Substantial evidence is more than a mere scintilla, but less than a
15 preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such
16 "relevant evidence which a reasonable person might accept as adequate to support
17 a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
18 F.3d at 459.  To determine whether substantial evidence supports the ALJ's
19 finding, the reviewing court must review the administrative record as a whole,
20 "weighing both the evidence that supports and the evidence that detracts from the
21 ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be
22 affirmed simply by isolating a specific quantum of supporting evidence.'"
23 *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th
24 Cir. 1998)).  If the evidence can reasonably support either affirming or reversing
25 the ALJ's decision, the reviewing court "'may not substitute its judgment for that
26 of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.
27 1992)).

28

**IV.**

**DISCUSSION**

**A.    The ALJ Failed to Properly Consider Plaintiff's Symptom Testimony**

Plaintiff argues the ALJ failed to articulate clear and convincing reasons for discounting her testimony regarding the limiting effects of her physical impairments.  P. Mem. at 1-8.

**1.    Legal Standard**

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms.  SSR 16-3p rescinded and superseded SSR 96-7p and applies to decisions made on or after March 28, 2016.  SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).  "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration."  *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

In adopting SSR 16-3p, the Social Security Administration ("SSA") sought to "clarify that subjective symptom evaluation is not an examination of an individual's character."  *Id.* at *2.

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis.  *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting *Trevizo*, 871 F.3d at 678).  First, the ALJ must determine whether the claimant

produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Id.*  Second, if the claimant satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities.  *Id.*

In assessing intensity and persistence, the ALJ may consider: a claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms.  *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen v. Chater*, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996)).  To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so.  *Id.* at 921, 929.

## 2.   **Plaintiff's Subjective Symptom Testimony**

The ALJ summarized plaintiff's testimony as follows. AR at 27.  At the hearing, plaintiff testified she had fibromyalgia, which makes her joints swell.  AR at 51. She used a walker after her laminectomy in 2013.  AR at 53.  Plaintiff has been using a wheelchair since the summer of 2016, when she was hospitalized for pneumonia.  AR at 51-52.  Plaintiff underwent a trial procedure with a temporary spinal cord stimulator, which provided some relief, but she ultimately decided not to get a permanent one because it was not as effective.  AR at 54-56.  Plaintiff testified she has shooting pain in the back when she sits.  AR at 60.  This pain sometimes goes down from her neck to her back and down to her legs.  *Id*.  Her

1  neck sometimes feels like her head cannot sit on the neck, and it is very painful.
2  *Id*.  Additionally, she has to sit down when brushing her teeth.  AR at 60.

3      In her memorandum, plaintiff highlighted additional parts of her hearing
4  testimony.  She testified she could stand for five to ten minutes at most.  AR at 44.
5  At work, she would do faxing while sitting on the seat of her walker because her
6  legs would get wobbly.  AR at 45.  This first became necessary after her surgery in
7  2013, and little by little she was getting worse.  AR at 45-46.  Plaintiff described
8  some of her treatment prior to surgery, and indicated that things were worse after
9  surgery, but that nothing more could be done related to her leg issue.  AR at 46.
10 She also had kidney failure and underwent dialysis.  AR at 46.  She stated that
11 while working it was apparent to her co-worker that she was suffering from
12 significant pain.  AR at 47.  She initially used a cane, then transitioned to a walker,
13 and later to a wheelchair after she was out of work.  AR at 47.  She stopped
14 working because of disabling symptoms, but she was later able to return back to
15 work with a different employer because she was eventually put on a medication
16 regimen that helped her symptoms.  AR at 50-51.  In 2016 she started using a
17 wheelchair that she obtained from a medical provider for balance issues, precaution
18 issues, and because she had fallen.  AR at 52.

19     Plaintiff testified she generally does not leave the house without the
20 wheelchair.  AR at 52.  She has issues with navigating stairs, but the medication
21 she takes for swelling helps but must be taken sparingly because of kidney issues.
22 AR at 52-53.  She confirmed that she used a wheelchair to see one consultative
23 examiner and a walker for the next one about an hour later, since the second
24 examination was just a few feet away and did not necessitate the wheelchair.  AR
25 at 53-54.

26     At work, plaintiff's performance suffered because of her disabilities.  AR at
27 59.  When she was employed, her husband drove her to and from work.  AR at 59.

28

1  Plaintiff testified that while sitting she gets shooting pains that get worse over time.

2  AR at 60.  She can only stand about ten minutes.  *Id*.  Her husband installed a chair

3  and handrails in the bathroom because she had fallen.  *Id*.  She reported a time

4  when her mother found her passed out.  *Id*.  She testified that rest helped her pain.

5  AR at 63.  She testified that she lacked a quality of life, and though she loved to

6  work, she now mostly stays in bed for fear of falling.  AR at 63.  While plaintiff

7  attempts to engage in some household chores, her husband does most of them.  *Id*.

8  She described issues with standing and bending.  AR at 63-64.  Plaintiff testified

9  that performing her billing clerk job required lifting in excess of 25 pounds.  AR at

10  64-65.

11      **3.    The ALJ's Findings**

12      At the first step for evaluating a claimant's symptom testimony, the ALJ

13  found plaintiff's medically determinable impairments could reasonably be

14  expected to cause the symptoms alleged.  AR at 27.  At the second step, the ALJ

15  partially discounted plaintiff's testimony concerning the intensity, persistence, and

16  limiting effects of her symptoms as not entirely consistent with the medical

17  evidence and other evidence in the record.  *Id.*  Because plaintiff cleared step one

18  and the ALJ found no evidence of malingering, the ALJ's reasons for discounting

19  plaintiff's testimony had to be specific, clear, convincing, and supported by

20  substantial evidence.

21      The ALJ's discussion of plaintiff's symptom testimony begins with a

22  summary of her statements at the hearing.  AR at 27.  The ALJ then explains that

23  her symptom testimony is not "entirely consistent with the medical evidence and

24  other evidence in the record for the reasons explained in this decision."  *Id.*  The

25  ALJ goes on to summarize the evidence that she interpreted as restricting plaintiff

26  to a reduced range of light exertion, including significant reductions in standing

27  and walking.  AR at 24-27.

28

### a.   Review of the Medical Record

The ALJ began by summarizing plaintiff's objective medical history, which revealed a significant history of chronic low back pain secondary to lumbar canal stenosis and radiculopathy.  AR at 27.  She first had lumbar laminectomy surgery in October 2013, which did not resolve her pain.  A lumbar spine MRI done in August 2015 revealed mild levoscoliosis, status post laminectomy from L2-Sl, multilevel disc disease from L2 to L5, moderate to severe bilateral foraminal stenosis at L2-3, and moderate to severe bilateral neural foraminal narrowing at L3-4 and L4-5.  AR at 27 (citing AR at 1541-42).  In March 2016, lumbar spine x-rays revealed multilevel degenerative changes and mild levoscoliosis. AR at 27 (citing AR at 326, 1540).

Treatment notes from Arthur Zepeda, M.D., reveal plaintiff's pain management treatment consisted of multiple medications and patches.  AR at 27 (citing AR at 303-60; 475-636; 1399-1698).  Although Dr. Zepeda's notes also reflected improvement with medications (*see, e.g.*, AR at 1417, 1422, 1433, 1449,1467, 1472, 1502), examinations showed decreased sensation, tenderness to palpation, an antalgic gait with the use of a cane or walker, and intact motor function.  Moreover, despite plaintiff rating her pain as high as 9 out of 10, the doctor found her in no acute distress in almost every visit.  AR at 27 (citing AR at1417, 1421, 1432,1448, 1466, 1471, 1481, 1492,  94, 1502).

In May 2016, Dr. Zepeda placed a temporary spinal cord stimulator in plaintiff's lumbar spine.  AR at 420-421.  Thereafter, plaintiff reported 50-60% relief, indicating she was able to stand longer, which allowed her to better maintain general activities of daily living and sit comfortably for longer periods of time.  *Id.* Most importantly, she stated the device allowed her  to sleep at night (8 hours versus 20 minutes).  *Id.*

On October 27, 2016, plaintiff indicated she had constant pain in the lower

back and leg.  AR at 1539.  An examination revealed she had a wide base and unsteady gait.  *Id*.  Plaintiff had normal Patrick's and Gaenslen's tests, although her lumbar spine range of motion was limited with pain.  *Id*.  No palpable trigger points were identified in the muscles of the low back, and her strength and tone were normal.  *Id*.  Deep tendon reflexes were 1 + at the bilateral biceps, triceps, patellar and trace bilateral Achilles tendons.  Motor strength was registered at 5/5 at the bilateral upper and 4/5 bilateral lower extremity flexors and extensors. Straight leg raising was negative at 70 degrees on the left and negative at 70 degrees on the right.  Sensation was normal at bilateral upper and lower extremities. *Id*.  At an examination on March 20, 2017, plaintiff had normal gait, muscle tone and strength, and sensation intact to touch.  AR at 480.

In April 2017, Edith Uy, M.D., a consultative examiner, conducted a medical examination of plaintiff.  AR at 468-474.  Plaintiff presented in a wheelchair and refused to stand, but stated she could also use a walker.  *Id.* Plaintiff was able to generate 10 pounds of force using the right hand and 10 pounds of force using the left hand using the Jamar Hand Dynamometer.  *Id.*  Her range of motion was grossly within normal limits in all joints.  *Id.*  No objective findings were noted for the plaintiff's back, gait, or balance.  *Id.*  Dr. Uy noted difficulties with examining her back because she was in a wheelchair and did not want to stand.  *Id.*  Her motor strength was documented at 5/5 throughout without focal motor deficits.  Deep tendon reflexes are 1 + and symmetrical throughout. *Id.*

Dr. Uy opined that plaintiff had chronic fatigue and fibromyalgia; herniated disc, spinal stenosis, and chronic pain syndrome; diabetes mellitus, apparently resolved; hypertension, on medication; and anxiety/depression.  Dr. Uy indicated plaintiff could lift and carry 20 pounds frequently and 10 pounds occasionally, and in an eight-hour work day she could stand and walk two hours and sit six hours.

1    Dr. Uy noted that plaintiff needed a walker for balance and support for short and

2    long distance ambulation, but could walk on uneven terrain.  Plaintiff could

3    occasionally bend, stoop, kneel, and crawl.  She should not climb ladders or work

4    at heights, with no impairment in hand use, hearing, and seeing (Exhibit 4F/6-7).

5                **b.**     **Reasons Given for Discounting Plaintiff's Testimony**

6          The ALJ gave three main reasons for finding plaintiff's testimony only

7    partially persuasive: (1) it was not entirely consistent with the objective medical

8    evidence; (2) her condition frequently improved with conservative treatment; and

9    (3) her allegations are inconsistent with her activities of daily living.  AR at 28-29.

10         Plaintiff argues that the ALJ's mere summary of plaintiff's medical records

11   is not sufficient to discredit her testimony, indicating that "the credibility

12   discussion must be sufficiently tailored to a credibility analysis."  P. Mem. at 5.  In

13   finding plaintiff's testimony "only partially persuasive," the ALJ indicated that

14   "the objective medical evidence and [plaintiff's] treatment history are not entirely

15   consistent with her allegations regarding the severity of her functional limitations."

16   AR at 28.  While the ALJ's analysis could have been more explicit, the court finds

17   that, on balance, the ALJ's juxtaposition of plaintiff's testimony with the

18   inconsistent medical evidence is sufficiently clear for the court to evaluate.  *See*

19   *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (ALJs are not required to

20   "perform a line-by-line exegesis of the claimant's testimony, nor do [the

21   regulations] require ALJs to draft dissertations when denying benefits" (citation

22   omitted)).

23         Nonetheless, the court does not find that the objective medical evidence

24   provides a sufficient basis to discount plaintiff's testimony.  The ALJ particularly

25   cites to one instance from March of 2016, six months prior to her alleged disability

26   onset date, where despite plaintiff's reports of increasing pain in the bilateral legs,

27   electrodiagnostic studies of the bilateral lower extremities were normal and there

28

1    was no electrophysiological evidence of lumbosacral radiculopathy, focal or

2    generalized neuropathy.  AR at 29 (citing AR at 1705-06).  The ALJ does not

3    explain how this one study of plaintiff's nerve functioning contradicts her

4    testimony about the ongoing intensity, persistence, and limiting side effects of her

5    symptoms.  As recounted above, the ALJ also pointed to several other instances of

6    normal test results within the relevant period.  But even assuming the

7    electrodiagnostic studies and other medical evidence do not support plaintiff's

8    symptom testimony, on its own the objective medical evidence does not provide a

9    clear and convincing reason to discount plaintiff's credibility.  *Burch v. Barnhart*,

10    400 F.3d 676, 680 (9th Cir. 2005); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir.

11    1991).

12        A second and related reason given by the ALJ was that plaintiff's treatment

13    providers frequently indicated her pain improved with conservative measures of

14    medications, physical therapy, and pain patches.  AR at 28 (citing 1417, 1502,

15    1703).  Although records showing improvement can undermine testimony

16    regarding debilitating pain symptoms, the records cited by the ALJ do not.  *See*

17    *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017)  ("evidence of medical

18    treatment successfully relieving symptoms can undermine a claim of disability").

19    The ALJ pointed to several portions of the treatment notes that describe some

20    improved pain control with medication and as a result of the temporary spinal cord

21    stimulator trial conducted in May 2016.  AR at 1417, 1502, 1703-04.  But the

22    treatment records must be viewed in light of the overall diagnostic record.

23    *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).  When read as a

24    whole, plaintiff's treatment notes consistently reveal that despite some occasional

25    signs of improvement resulting from the positive spinal cord stimulator trial,

26    plaintiff continued to suffer from debilitating pain because of her moderate to

27    severe stenosis.  AR at 233, 326, 352.

28

1       Finally, the ALJ discounted plaintiff's testimony based on her daily

2  activities.  The ALJ explained that despite plaintiff's allegations of debilitating

3  physical and mental problems, plaintiff "remained relatively active, managing her

4  own finances, completing activities of daily living independently."  AR at 29.  In

5  April 2017, she reported adequate self-care skills, doing light household chores,

6  running errands, shopping, cooking, and driving a car by herself."  AR at 29 (citing

7  AR at 465).  Engaging in daily activities that are incompatible with the severity of

8  symptoms alleged can support an adverse credibility determination.  *See, e.g.*, *Orn*

9  *v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec.*

10  *Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  But here, the activities included

11  completing basic chores, sometimes with the help of her husband.  The court does

12  not see how these activities may contradict plaintiff's testimony.  "[I]f a claimant

13  engages in numerous daily activities involving skills that could be transferred to

14  the workplace, the ALJ may discredit the claimant's allegations upon making

15  specific findings relating to those activities."  *Burch*, 400 F.3d at 681 (citations

16  omitted).  There is no indication here that the limited activities plaintiff engaged in,

17  often with the help of her husband, either comprised a "substantial" portion of her

18  day, or were "transferrable" to a work environment.  *See Fair v. Bowen* , 884 F.2d

19  597, 603 (1989) (a claimant does not need to be "utterly incapacitated").  Thus, this

20  was not a convincing reason to discount her symptom testimony.

21       In sum, the ALJ failed to provide sufficient clear and convincing reasons for

22  discounting plaintiff's symptom testimony.

23  **B.**    **The ALJ Failed to Properly Consider Third-Party Evidence**

24       Plaintiff separately argues the ALJ failed to properly consider third-party

25  witness testimony.  P. Mem. at 9-10.  This included statements by plaintiff's

26  friends, relatives, and coworker, which the ALJ asserts, and the parties agree, was

27  essentially consistent with plaintiff's testimony.  *See* AR at 30.

28

"[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (cleaned up); *see Smolen*, 80 F.3d at 1288; *see also* 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4) (explaining that the Commissioner will consider all evidence from "non-medical sources[,]" including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy"). The ALJ may only discount the testimony of lay witnesses if he provides specific "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and give reasons germane to each witness for doing so.").

The ALJ gave two reason for discounting the third-party witness testimony here. First, she found it was not supported by the medical evidence. An ALJ may reject lay testimony if it is *inconsistent* with medical evidence, but not if it is simply *unsupported* by medical evidence. *Compare Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.") (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) with *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (a lack of support from the medical evidence is not a proper basis for disregarding lay observations); *Bruce v. Astrue*, 577 F.3d 1113, 1116 (9th Cir. 2009) (same). In finding that a lack of support from medical evidence is not a germane reason to discount lay testimony, the Ninth Circuit notes that the "fact that lay testimony . . . may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich*, 874 F.3d at 640 (citing *Smolen*, 80 F.3d at 1289). As discussed above with respect to plaintiff's testimony, testimony

regarding plaintiff's symptoms may not be fully supported by the objective medical evidence, but it the medical record is not inconsistent with her subjective complaints.

The ALJ also found that, since the third-party witness testimony was essentially the same as plaintiff's testimony, it should be discounted for the same reasons. Had the ALJ properly discounted plaintiff's testimony, this would be a germane reason to discount the lay testimony of others. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (finding ALJ's rejection of lay witness testimony, based in part on the same reasons for discounting the plaintiff's own allegations, constituted "germane reasons" for rejecting lay witness's testimony). In addition, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in discounting the lay witness testimony is harmless. *Molina v. Astrue*, 674 F.3d 1115, 1117 (9th Cir. 2012). But here, the court has already found that the ALJ erred in failing to provide sufficient clear and convincing reasons to discount plaintiff's testimony.

Accordingly, the ALJ erred in failing to provide a germane reason to discount the testimony of the third-party witnesses.

## C.   The ALJ Failed to Properly Consider the Opinion of Consultative Examiner Dr. Uy

Plaintiff next argues that "the ALJ failed to properly consider the opinion of Dr. Uy, the consultative examiner, who provided the only examining opinion of record." P. Mem. at 9.

### 1.   Legal Standard

To determine whether a claimant has a medically determinable impairment, the ALJ considers different types of evidence, including medical evidence. 20

C.F.R. §§ 404.1527(b), 416.927(b).[2]  The regulations distinguish among three
types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-
examining physicians.  20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v.
Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating
physician's opinion carries more weight than an examining physician's, and an
examining physician's opinion carries more weight than a reviewing physician's."
*Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R.
§§ 404.1527(c)(1)-(2), 416.027(c)(1)-(2).

The ALJ is not bound by the opinion of an examining physician.  *Lester*, 81
F.3d at 830.  If an examining physician's opinion is uncontradicted, the ALJ must
provide clear and convincing reasons for giving it less weight.  *Id.* (citation
omitted).  If the opinion is contradicted by other opinions, the ALJ must provide
specific and legitimate reasons, supported by substantial evidence, to discount it.
*Id.* at 830-31 (citation omitted).  The opinion of a non-examining source alone is
not substantial evidence to discount an examining opinion.  *Id.* at 831 (citations
omitted).  Additionally, the opinions of a specialist about medical issues related to
his or her area of expertise are entitled to more weight than the opinions of a non-
specialist.  *Smolen*, 80 F.3d at 1285 (citations omitted).

## 2.   Dr. Uy's Examining Opinion

On April 10, 2017, Dr. Editha B. Uy conducted a consultative examination
at the request of the SSA.  AR at 469-74.  The exam showed plaintiff was in no
acute distress, with full range of motion of the neck and extremities, full strength,
intact neurologic function, and no pain or tenderness noted.  AR at 471-73.  Dr. Uy
found that plaintiff could lift and carry 10 pounds frequently and 20 pounds

---

[2]   The SSA issued new regulations effective March 27, 2017.  All regulations
cited in this section are effective for claims filed prior to March 27, 2017.  *See* 20
C.F.R. §§ 404.1527(b), 416.927(b).

occasionally.  AR at 473.  Dr. Uy found that plaintiff could stand and walk two hours out of eight hours, and she "needs a walker for balance and support for short and long-distance ambulation."  AR at 473.  Dr. Uy reported that plaintiff "is able to walk on uneven terrain but should not climb ladders or work at heights."  AR at 474.  Dr. Uy noted that plaintiff's back was difficult to examine because she was in a wheelchair.  AR at 472.

### 3.   The ALJ's Findings

The ALJ partially discounted Dr. Uy's opinion, accepting most of the opined limitations but giving little weight to the doctor's opinion regarding plaintiff's need for a walker for ambulation.  AR at 29.  The ALJ found this opinion was "inconsistent with the finding that plaintiff could walk on uneven terrain and with the other objective evidence of record."  AR at 29.  The ALJ noted that Dr. Uy did not examine plaintiff's back or review any medical records.  *Id*.  Although the doctor noted that plaintiff was in a wheelchair and stated that she did not want to stand, the ALJ opined that she could also use a walker since plaintiff was using a walker an hour later when she presented to the psychiatric consultative examiner. *Id*.  The ALJ concluded that Dr. Uy based her opinion solely on plaintiff's statements because she did not observe plaintiff standing or walking, and did not examine her back.  *Id*.  The ALJ also discounted Dr. Uy's opinion because plaintiff's treatment notes from outpatient visits reflected that plaintiff sometimes had normal gait.  *Id*.  (citing AR at 480, 1418, 1567).

As a preliminary matter, the ALJ commented that Dr. Uy appeared to have provided her opinion solely based on plaintiff's statements.  AR at 29.  To the extent the ALJ held that against the opinion, that part of the ALJ's reasoning was devoid of substantial evidence.  *See Alicia B. v. Berryhill*, 2019 WL 1081208, at *9 (C.D. Cal. Mar. 7, 2019) ("An ALJ may not reject a treating physician's opinion based on mere speculation concerning the basis for the physician's opinion."

(citing *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995))).  Moreover, Dr. Uy's report states that while she examined plaintiff she also reviewed all medical records, although "[t]he back was difficult to examine because [plaintiff] was in a wheelchair."  AR at 472-73.  Accordingly, Dr. Uy provided her opinion at least based on her review of the medical record and the examination of plaintiff including plaintiff's statements.

Plaintiff mainly argues that the ALJ's rejection of Dr. Uy's opinion that plaintiff needs a walker for ambulation is not supported by the objective evidence in the record.  P. Mem. at 11-14.  Plaintiff contends the ALJ erroneously relied on three pages of the record that noted plaintiff had normal gait.  *Id*.  The first page cited by the ALJ indeed has a notation that plaintiff had normal gait.  AR at 480.  The second page lacks any discussion of plaintiff's gait (AR at 1418), and as plaintiff correctly points out, this page is part of a report that documented plaintiff sitting in a wheelchair (AR at 1421).  The third page the ALJ cited states "normal gait with walker."  AR at 1567.  Plaintiff argues that in rejecting Dr. Uy's opinion, the ALJ ignored the overwhelming evidence in the record supporting the plaintiff's need for at least a walker.  P. Mem. at 12-14.  The court agrees.

Although the ALJ need not discuss all available evidence, it is error to fail to explain "why significant, probative evidence has been rejected."  *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003) (internal quotation marks omitted).  Here, plaintiff's use of a walker and wheelchair was consistently documented from early 2016 through late 2018.  *See, e.g.*, AR at 344, 350, 354, 364, 374, 404, 417, 425, 431, 436, 442, 448, 454, 485, 491, 506, 509, 512, 517, 539, 543, 556, 560.  Records from as early as 2016 document plaintiff's unsteady gait, complaints of being unable to stand, walk, or sit for prolonged periods, and her long term use of opiate analgesic for the resulting pain.  AR at 350, 354, 414, 417.  Some of the same records document normal gait with walker (AR at 374, 425, 442), as well as

18

1    normal gait presumably without a walker (AR at 480, 572, 647).  *See Lingenfelter*,

2    504 F.3d at 1035 ("[The Court] must consider the entire record as a whole . . . and

3    may not affirm simply by isolating a specific quantum of supporting evidence.").

4    Taken as a whole, substantial probative evidence in the record supports plaintiff's

5    use of a walker, consistent with Dr. Uy's opinion that plaintiff needed a walker for

6    short and long distance ambulation.[3]

7         The ALJ also appears to discount Dr. Uy's opinion because it contradicts the

8    opinions of Dr. Chan and Dr. Scott, the State Agency medical consultants.  AR at

9    29.  Dr. Chan and Dr. Scott disagreed with Dr. Uy's determination that a walker

10   was medically necessary and opined that plaintiff needed a cane to ambulate long

11   distance.  AR at 71-95.  The ALJ agreed with the State Agency consultants.  AR at

12   29.  But the State Agency consultants here generally relied on the same clinical

13   findings as Dr. Uy.  *See Stephens v. Berryhill*, 2019 WL 6434346, at *1 (C.D. Cal.

14   Aug. 27, 2019) (if non-examining physician relied primarily on same clinical

15   findings as examining physician, the non-examining physician's opinion cannot

16   constitute substantial evidence).  The ALJ has the burden to provide specific and

17   legitimate reasons, supported by substantial evidence, to discount a contradicted

18   examining opinion.  *Lester*, 81 F.3d at 830.  Thus, if the ALJ seeks to rely on a

19   non-examining opinion to discount an examining one, he or she must show that the

20   non-examining physician did not rely on the same clinical evidence to reach a

21   different conclusion than the examining physician.  The ALJ did not make this

22   showing, and so this reason was neither legitimate nor supported by substantial

23   evidence.

24        For all these reasons, the ALJ erred in discounting Dr. Uy's opinion that

25   plaintiff required a walker to ambulate.  Given the importance this error and the

26

27        [3]   The court does not opine as to whether plaintiff's walker was medically
28   necessary.  The ALJ should make this determination on remand.

1  others recounted above had on the formulation of plaintiff's RFC, which in turn

2  directly affected the testimony of the vocational expert, the court does not reach the

3  final issue raised by plaintiff, that the vocational evidence was incomplete and

4  contradictory.

5  **V.**

6  **REMAND IS APPROPRIATE**

7  　　　The decision whether to remand for further proceedings or reverse and

8  award benefits is within the discretion of the district court. *McAllister v. Sullivan*,

9  888 F.2d 599, 603 (9th Cir. 1989).  Typically, in accordance with the "ordinary

10  remand rule," the reviewing court will remand to the Commissioner for additional

11  investigation or explanation upon finding error by the ALJ. *Treichler v. Comm'r*,

12  775 F.3d 1090, 1099 (9th Cir. 2014).  Nonetheless, it is appropriate for the court to

13  exercise its discretion to direct an immediate award of benefits where: "(1) the

14  record has been fully developed and further administrative proceedings would

15  serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons

16  for rejecting evidence, whether claimant testimony or medical opinions; and (3) if

17  the improperly discredited evidence were credited as true, the ALJ would be

18  required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d

19  995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for

20  remanding with instructions to calculate and award benefits).  But where there are

21  outstanding issues that must be resolved before a determination can be made, or it

22  is not clear from the record that the ALJ would be required to find a plaintiff

23  disabled if all the evidence were properly evaluated, remand for further

24  proceedings is appropriate. *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir.

25  2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the

26  court must "remand for further proceedings when, even though all conditions of

27  the credit-as-true rule are satisfied, an evaluation of the record as a whole creates

28

1 serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

2      Here, remand is required because the ALJ failed to properly consider

3 plaintiff's symptom testimony, the similar testimony of third-party witnesses, and

4 one aspect of Dr. Uy's medical opinion, and the ALJ must do so before a

5 determination can be reached as to whether plaintiff is disabled.  On remand, the

6 ALJ shall  reconsider plaintiff's subjective complaints and either credit her

7 testimony or provide clear and convincing reasons supported by substantial

8 evidence for rejecting it, and shall likewise reconsider the testimony of the lay

9 witnesses and either credit it or provide a germane reason to reject it.  The ALJ

10 shall also reconsider Dr. Uy's opinion, and either accept all of the opined

11 limitations or provide specific and legitimate reasons supported by substantial

12 evidence for rejecting them.  The ALJ shall then proceed through steps two, three,

13 four, and five, reassessing plaintiff's RFC between steps three and four, to

14 determine what work, if any, plaintiff was capable of performing.

15 **VI.**

16 **CONCLUSION**

17      IT IS THEREFORE ORDERED that Judgment shall be entered

18 REVERSING the decision of the Commissioner denying benefits, and

19 REMANDING the matter to the Commissioner for further administrative action

20 consistent with this decision.

21

22 DATED: September 27, 2022

23  

24                   SHERI PYM
United States Magistrate Judge

25

26

27

28